IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:12-CV-0090

**FURNITURE DISTRIBUTORS, INC.,**

Plaintiff,

v.

**SOFTWARE SUPPORT-PMW, INC.**

Defendant.

**COMPLAINT**

**[JURY TRIAL DEMANDED]**

For its complaint against Defendant, Plaintiff alleges as follows:

## NATURE OF ACTION

1. Plaintiff Furniture Distributors, Inc. ("FDI") operates a chain of furniture stores under the name of Kimbrell's Furniture with locations in North Carolina, South Carolina, and Georgia. In 2008, FDI entered into a business relationship with Defendant Software Support-PMW, Inc. ("Software Support"). FDI sought to use Software Support's Positionsoft system to track inventory, support customer relations, manage accounting, and perform other important business functions. FDI brings this action to recover the damages it suffered when Software Support misrepresented the capabilities of its software and failed to fulfill its obligations to FDI.

## PARTIES AND JURISDICTION

2. FDI is a North Carolina corporation with its headquarters at 4524-C South Boulevard in Charlotte, North Carolina.

3. Upon information and belief, Software Support is a New Jersey corporation with its headquarters at 420 Ganttown Rd. in Sewell, New Jersey.

4. Jurisdiction in this Court is proper under 28 U.S.C. § 1332 in that the parties are of diverse citizenship and the amount in controversy, exclusive of the interest and costs, exceeds $75,000.

## ALLEGATIONS COMMON TO ALL CLAIMS

5. FDI operates a chain of more than fifty furniture stores located in North Carolina, South Carolina, and Georgia.

6. To operate its business and serve its customers, FDI must be able to effectively and efficiently track its inventory, manage accounting data, handle advertising promotions and rebates, meet payroll, and perform other critical business management functions.

7. Software Support offers a product called "Positionsoft" to companies in the "Large Ticket Retail Industry," including furniture retailers such as FDI.

8. Software Support markets Positionsoft as a "Business Management System" that provides functionality to handle business management tasks including customer history, inventory control, sales & order entry, accounts receivable, accounts payable, billing, delivery system, rebates & advertising, payroll, general ledge, purchase order system, and check requests.

9. Software Support told FDI that it would assess the needs of FDI and make recommendations for a system that would meet those needs. Software Support then provided a proposal to FDI recommending installation of Positionsoft.

10. During the sales process, Software Support representatives told FDI that Positionsoft was fully customizable, would meet the needs of FDI, and was an "industry leading" product.

11. FDI accepted the proposal, and Software Support and FDI began working to implement Positionsoft and Software Support's recommendations.

2

12. Despite Software Support's promises and recommendations to FDI, the Positionsoft system did not meet the needs of FDI.

13. Software Support told FDI that Positionsoft was fully customizable to fit the needs of FDI. Instead of delivering on this promise, Software Support has tol FDI that it should change longstanding processes and operations to fit Positionsoft.

14. In the limited instances where Software Support has agreed to customize the system for FDI, the lack of flexibility in the system means that even the simplest changes require expensive and time consuming customization programming.

15. FDI has been unable to use functionality that Software Support promised to provide. For example, FDI attempted to use Positionsoft to take physical inventory in a store. Although Software Support promised to provide inventory control through Positionsoft, the process failed.

16. Software Support has made these problems with Positionsoft worse by maintaining excessive and rigid control over the system's software and hardware, preventing FDI from taking necessary action to resolve problems with Positionsoft.

17. Software Support has failed to provide reasonable and customary service and support to FDI. Even urgent problems related to core business management functions have not been addressed in a timely manner.

18. Software Support has also insisted that service and support issues be handled directly by its President, Jim White, Jr., leading to a bottleneck in addressing service issues and resolving problems.

19. Software Support has failed to adequately and reasonably communicate with FDI. In many cases, Software Support has been unresponsive or has failed to respond to communications from FDI in timely fashion.

20. When presented with flaws or defects with the Positionsoft system, Software Support has tried to blame any and all problems on "user error." Software Support refuses to acknowledge and work to resolve the limitations of Positionsoft.

21. FDI and its executives and employees have spent excessive amounts of time and energy attempting to resolve problems caused by Software Support, distracting them from other important duties and impairing the ability of FDI to effectively run its business.

22. FDI recently hired new employees with expertise in information technology in an attempt to resolve issues with Positionsoft and obtain the benefits that Software Support promised to deliver. FDI also retained the services of technology consulting firm, Elliott Davis, to work towards a resolution of theses issues.

23. Software Support has refused to cooperate with Elliott Davis or the new employees at FDI to understand and resolve the issues. Software Support refuses to provide basic information about the Positionsoft system and has even refused to speak with the head of information technology at FDI regarding the problems FDI is experiencing.

24. Upon information and belief, Software Support has overcharged FDI for travel and other expenses.

25. Upon information and belief, Software Support raised its software programming rates and has changed billing terms without adequate notice or explanation to FDI. As a result, Software Support has overcharged FDI for services provided in connection with Positionsoft.

26. FDI has spent significant sums of money attempting to implement the Positionsoft system only to find that the system cannot deliver the functionality that Software Support promised to provide.

27. Despite its failure to meet its obligations to FDI, and despite receiving significant payments from FDI without delivering the functionality it promised, Software Support claims that FDI owes it additional funds.

## COUNT I – BREACH OF CONTRACT

28. The allegations of ¶¶ 1 through 27 are incorporated herein by reference and realleged as if fully set forth herein.

29. Software Support had a contract with FDI to deliver a functioning business management system.

30. By virtue of the conduct described above, FDI breached its contract with Software Support.

31. Such breach proximately damaged Software Support in an amount to be determined at trial.

## COUNT II – NEGLIGENT MISREPRESENTATION

32. The allegations of ¶¶ 1 through 27 are incorporated herein by reference and realleged as if fully set forth herein.

33. Software Support represented that Positionsoft could provide the functionality that FDI needed in a business management system.

34. Software Support intended FDI to rely on the representations it made regarding Positionsoft's functionality.

35. Software Support's representations regarding the functionality of Positionsoft and the ability of Positionsoft to meet the needs of FDI were false.

36. In obtaining and communicating these representations to FDI, Software Support failed to use the level of reasonable care and competence required of a professional technology company.

37. FDI actually and reasonably relied on Software Support's representations.

38. FDI was financially damaged by its reliance.

### COUNT III – UNFAIR AND DECEPTIVE TRADE PRACTICES

39. The allegations of ¶¶ 1 through 27 are incorporated herein by reference and realleged as if fully set forth herein.

40. The conduct of defendants is in and affects commerce.

41. The conduct of defendants, as described herein, constitutes unfair and deceptive acts and practices pursuant to Section 75-1.1 of the North Carolina General Statutes.

42. Accordingly, FDI is entitled to damages from Software Support and to trebling of those damages and attorney's fees, pursuant to Sections 75-16 and 75-16.1 of the North Carolina General Statutes.

### COUNT IV – DECLARATORY JUDGMENT

43. The allegations of ¶¶ 1 through 24 are incorporated herein by reference and realleged as if fully set forth herein.

44. As is more particularly alleged above, there is a presently existing and unresolved controversy between FDI and Software Support. The controversy includes, among other things, whether Software Support breached its obligations to FDI, whether FDI has any obligation to

make further payments to Software Support, and FDI's right to access the Positionsoft system on an ongoing basis.

45. Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, FDI requests that the Court issue a declaratory judgment setting forth the respective rights and obligations of the parties. FDI specifically requests that the Court enter a declaratory judgment declaring that (a) FDI did not breach any contractual obligations to Software Support, (b) FDI has no obligation to make further payments to Software Support, and (c) FDI has the right to continued access and use of the Positionsoft system.

## PRAYER FOR RELIEF

**WHEREFORE**, FDI respectfully prays that the Court:

a. Enter judgment against Software Support pursuant to the above claims for relief, in the amount of damages as may be proven at trial and allow recovery of punitive damages as may be appropriate;

b. Treble the compensatory damages awarded pursuant to Section 75-16 of the North Carolina General Statutes;

c. Award FDI its attorneys' fees pursuant to Section 75-16.1 of the North Carolina General Statutes;

d. Enter a declaratory judgment that FDI fulfilled its obligations to Software Support and has no obligation to make any further payments;

e. Tax the cost of this action against Defendants; and

f. Grant such other and further relief as it may deem just and proper.

This 10th day of February, 2012.

     /s/ Edward F. Hennessey, IV
Edward F. Hennessey, IV
N.C. State Bar No. 15899
Adam K. Doerr
N.C. State Bar No. 37807

ROBINSON, BRADSHAW & HINSON, P.A.
101 North Tryon Street, Suite 1900
Charlotte, North Carolina  28246
Telephone:  (704) 377-2536
Facsimile:  (704) 378-4000
thennessey@rbh.com
adorer@rbh.com

*Attorneys for Plaintiff*

8
Case 3:12-cv-00090-GCM   Document 1   Filed 02/10/12   Page 8 of 8