IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:12-cv-90-GCM

| | |
|---|---|
| FURNITURE DISTRIBUTORS, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| SOFTWARE SUPPORT-PMW, INC., ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## I. INTRODUCTION

This matter is before the Court on Plaintiff's Motion for Attorney Fees (Doc. No. 46) and Memorandum in Support (Doc. No. 47), Defendant's Memorandum in Opposition (Doc. No. 49), and Plaintiff's Reply (Doc. No. 51). For the reasons set forth below, Plaintiff's Motion is **GRANTED**.

## II. BACKGROUND

On February 10, 2012, Plaintiff Furniture Distributors, Inc. ("FDI") filed its Complaint against Defendant Software Support-PMW, Inc. seeking money damages based on claims for breach of contract, negligent misrepresentation, and unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1 *et seq.* (Doc. No. 1). On April 19, 2012, Defendant filed its Answer and counterclaims for breach of contract, unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1 *et seq.*, fraud, and violation of the North Carolina Trade Secrets Protection Act (Doc. No. 8). On June 4, 2012, Plaintiff filed an Answer to Defendant's counterclaims (Doc. No. 14). After a period of discovery and an unsuccessful mediation, the case went to trial on September 9, 2013. At the close of evidence, the Court disposed of Defendant's counterclaims on a motion for

a directed verdict. The jury subsequently found in favor of Plaintiff on its negligent misrepresentation claim in the amount of $450,000 (Doc. No. 43).

### III. DISCUSSION

Plaintiff now seeks an award of attorney fees based on both N.C. Gen. Stat. § 75-16.1(2) and N.C. Gen. Stat. § 66-154(d). N.C. Gen. Stat. § 75-16.1(2) relates to Defendant's UDTPA claim, and provides that the presiding judge may award attorney fees if "[t]he party instituting the action knew, or should have known, the action was frivolous and malicious." N.C. Gen. Stat. § 66-154(d) relates to Defendant's NCTSPA claim, and provides that attorney fees may be awarded to the prevailing party "[i]f a claim of misappropriation is made in bad faith." Plaintiff correctly points out that the decision whether to award attorney fees under both these sections "is within the sound discretion of the trial judge." *Birmingham v. H & H Home Consultants & Designs, Inc.*, 189 N.C. App. 435, 442 (2008); *see also Silicon Knights, Inc. v. Epic Games, Inc.*, 917 F. Supp. 2d 503, 519 (E.D.N.C. 2012).

Plaintiff asserts that an award of fees here is appropriate because (1) Defendant failed to produce any evidence at trial that Plaintiff had violated the UDTPA or the NCTSPA; (2) the Court disposed of Defendant's counterclaims on Plaintiff's motion for a directed verdict; and (3) Defendant knew or should have known that its counterclaims were frivolous and malicious or in bad faith. (Doc. No. 46 at 1). Further, because "[a]ll of the claims and counterclaims arose from a common nucleus of fact and are inextricably interwoven," Plaintiff argues, "the claims are not divisible, [and] there is no way to apportion the $254,713.87 in legal fees FDI incurred." (Doc. No. 47 at 15-16). Thus, Plaintiff asks the Court to award it the full amount of its legal fees incurred in this litigation. In the alternative, the Court is asked to award FDI half that amount, as

Plaintiff believes this "is a reasonable estimate of the fees FDI incurred . . . solely in defense of Defendant's counterclaims." (Doc. No 47 at 20).

In response, Defendant maintains that it prosecuted its counterclaims in good faith based on theories that Plaintiff (1) fraudulently continued to accept work from Defendant after it decided to terminate Defendant from the project on which it was working; (2) issued threats to Defendant that amounted to an inequitable assertion of power; and (3) misappropriated, or attempted to misappropriate, Defendant's trade secrets. (Doc. No. 49 at 2-3). In support, it notes that the filing of its counterclaims "was well supported by the circumstances known to Defendant at the time it filed" them. (*Id.* at 3). Defendant acknowledges that throughout discovery, most of its efforts were focused on defending against Plaintiff's claims rather prosecuting its own, but credits that to the disparity in the amounts claimed as actual damages ($3.3 million by Plaintiff as opposed to $31,000 by Defendant) and the potential exposure it faced from those claims. It also acknowledges that its counterclaims were disposed of by the Court on a directed verdict at the close of evidence, but argues that this does not immediately invite the conclusion that its claims were frivolous, malicious, or in bad faith.

A claim is frivolous if "a proponent can present no rational argument based upon the evidence or law in support" thereof. *McKinnon v. CV Indus.*, 745 S.E.2d 343, 350 (N.C. Ct. App. 2013). A claim is malicious if "it is wrongful and done intentionally without just cause or excuse or as a result of ill will." *Id.* Bad faith "implies a false motive or a false purpose." *Bundy v. Commercial Credit Co.*, 202 N.C. 604, 606 (1932). After a thorough review of the record, the Court agrees that these claims were totally meritless, and it appears that Defendant brought them as a defensive tactic. The Court notes that Defendant's NCTSPA claim was especially meritless given that Plaintiff never had access to its source code or database such that it even had the

*ability* to misappropriate Defendant's intellectual property. Plaintiff correctly points out that a claim under the NCTSPA must offer "substantial evidence" that the defendant "had a specific opportunity to acquire the trade secret." *Barr-Mullin, Inc. v. Browning*, 108 N.C. App. 590, 596 (1993). Defendant failed to offer *any* evidence in support of this proposition. Defendant argues that it believed it had a basis for these claims at the time they were brought, but certainly it discovered that they were meritless at some point before trial. Its persistence in pressing these claims through discovery and depositions—and submitting them as issues for trial—amounts to a bad faith prosecution of the claims and justifies an award of attorney fees in this case.

Plaintiff has submitted a valuation of the amount of fees to which it is entitled based on an accounting of the time spent in this litigation as a whole. It does not attempt to separate the hours it spent pressing its own claims from the hours it spent defending against Defendant's counterclaims, but instead offers that $127,356.94 is "the best estimate of legal fees FDI incurred solely in relation to Defendant's counterclaims." (Doc. No. 47 at 20). However, the Court believes that, based on the amount in controversy and the results obtained, an award of $50,000 adequately compensates Plaintiff for its effort in defending against these counterclaims.

## IV. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Attorney Fees (Doc. No. 46) is hereby **GRANTED**. Defendant is ordered to pay Plaintiff the amount of $50,000 in attorney fees in addition to the amount awarded at trial.

Signed: February 4, 2014

**SO ORDERED.**

Graham C. Mullen
United States District Judge